## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT J. LEWIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 05-3-B-W |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises several issues, including whether the administrative law judge was required to ask the vocational expert whether the plaintiff was capable of returning to his past relevant work, whether the administrative law judge improperly failed to consider the subjective stress felt by the plaintiff in work settings, whether the plaintiff's mental impairment was medically equivalent to an impairment listed in the applicable regulations and whether the administrative law judge properly discounted the opinion of a treating physician's assistant. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on (*continued on next page*)

administrative law judge found, in relevant part, that the plaintiff's borderline intellectual functioning and personality disorder were considered severe impairments but did not meet or medically equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 20; that his allegations concerning his limitations were not totally credible, Finding 5, *id.*; that he had the residual functional capacity to perform low skilled, low stress jobs, Finding 6, *id.*; that his past relevant work as a material handler did not require the performance of work-related activities precluded by his residual functional capacity, Finding 7, *id.*; and that he accordingly was not under a disability as defined in the Social Security Act at any time through the date of the decision, Finding 9, *id.* The Appeals Council declined to review the decision, *id.* at 6-8, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusions drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of demonstrating inability to return to past relevant work. 20 C.F.R. § 404.1520(e); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step the commissioner must make findings of the plaintiff's residual functional capacity and the physical and mental demands of past work and determine whether the plaintiff's residual functional capacity would permit

---

August 5, 2005, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with (*continued on next page*)

performance of that work.  20 C.F.R. § 404.1520(e); Social Security Ruling 82-62, reprinted in *West's*

*Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62") at 813.

**Discussion**

The plaintiff states his first argument as follows:

> Since the ALJ did not frame a hypothetical question with an RFC for the VE
> to evaluate the claimant's prospects, and since the VE offered no opinion
> regarding the ability to return to previous work, the decision cannot be
> supported by substantial evidence.

Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 8) at 2.  He

offers no citation to authority to support the necessarily implied foundation to this argument: that

testimony of a vocational expert is required at Step 4.  The burden of proof remains with the claimant

at Step 4.  *Santiago v. Secretary of Health & Human Servs.*, 944 F.2d 1, 5 (1st Cir. 1991).  The

administrative law judge may rely on the claimant's own description of the duties involved in his past

relevant work.  *Id*.  Social Security Ruling 82-61, entitled "Past Relevant Work — The Particular Job

or the Occupation as Generally Performed," does not contemplate testimony from a vocational expert

on this aspect of the Step 4 evaluation.  Social Security Ruling 82-61 ("SSR 82-61"), reprinted in

*West's Social Security Reporting Service* Rulings 1975-1982, at 836-38.  In addition, SSR 82-62,

which concerns the claimant's ability to do past relevant work, the other aspect of the Step 4

evaluation, also does not require the testimony of a vocational expert.  Social Security Ruling 82-62,

reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 809-13.  The case law

makes clear that vocational testimony is not required at Step 4.  *Santiago v. Commissioner of Soc.*

*Sec.*, 141 F.3d 1150 (Table), 1998 WL 161133 (1st Cir. Mar. 18, 1998) at  **1; *Santos-Martinez v.*

*Secretary of Health & Human Servs.*, 54 F.3d 764 (table), 1995 WL 275679 (1st Cir. May 9, 1995)

---

citations to relevant statutes, regulations, case authority and page references to the administrative record.

at **2. *See also*, *e.g., Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003); *Sorensen v. Barnhart*, 69 Fed.Appx 864, 867 (9th Cir. 2003); *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994).[2]

The plaintiff next attacks the administrative law judge's finding that he retained the residual functional capacity to perform "low skilled, low stress jobs," Record at 19, contending that "[t]he proper criteri[on] is not an objectively low stress work environment, but rather the subjective stress felt by the claimant," Itemized Statement at 3. He relies on *Lancellotta v. Secretary of Health & Human Servs.*, 806 F.2d 284 (1st Cir. 1986), to support his position. Itemized Statement at 3-4. In that decision, the First Circuit required the agency to evaluate the claimant's ability to work "in light of" a severe mental impairment. 806 F.2d at 285. Contrary to the plaintiff's argument, the First Circuit did not require the administrative law judge to evaluate past relevant work by "the subjective stress felt by the claimant," Itemized Statement at 3, but rather to follow Social Security Ruling 85-15 and evaluate past relevant work by considering "[t]he basic mental demands of competitive, remunerative, unskilled work" including "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting," 806 F.2d at 286. In the instant case, as the administrative law judge noted, Record at 19, it is significant for the Step 4 inquiry that the plaintiff himself testified that he left the job that was identified as past relevant work "because they went bankrupt," *id*. at 47. The fact that he left this job only because the employer no longer existed is very relevant evidence concerning his ability to return to that sort of work, independent of how much stress the plaintiff felt in performing it. The undisputed fact is that he performed that work for "[a]bout a year." *Id*. at 46. This fact also explains why, contrary to the plaintiff's position, it was not

---

[2] The plaintiff correctly notes, Itemized Statement at 1-2, that the vocational expert did not testify "that an individual with the claimant's residual functional capacity could return to his past relevant work," Record at 19, but so long as there is other evidence in the record to support the administrative law judge's Step 4 conclusion, that error is harmless, since no expert vocational testimony was required.

necessary for the administrative law judge to obtain testimony from the vocational expert "that the requirements of the DOT for a rope-laying-machine operator, an SVP of 3 and a GED level of R2, . . . are met by the claimant, given his mental limitations and inability to follow complex instructions." Itemized Statement at 4. I note also that such a requirement could not arise in the absence of evidence that the plaintiff's "mental limitations and inability to follow complex instructions" had worsened significantly since he lost that job. Counsel for the plaintiff was unable to point to any such evidence in the record.[3]

The plaintiff next contends that his mental retardation is medically equivalent to Listing 12.05. That is the Listing for mental retardation, which provides, in relevant part:[4]

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>     The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>                              * * *
>     D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>         1. Marked restriction of activities of daily living; or
>         2. Marked difficulties in maintaining social functioning; or
>         3. Marked difficulties in maintaining concentration, persistence, or pace: or
>         4. Repeated episodes of decompensation, each of extended duration.

---

[3] At oral argument, counsel for the plaintiff referred to school records from 1986 included a performance IQ score, Record at 188-89, that was 30 points higher than the performance IQ score assigned by Dr. Millis, *id*. at 228, contending that this change was evidence that the plaintiff "at one time likely could have done" his past relevant work but by 2003 he no longer had that ability. The problem for the plaintiff here is that he worked as a materials handler, the job to which the administrative law judge found he was capable of returning, *id*. at 19, 20, from 1998 to 2000, *id*. at 113. He alleged onset of disability on December 31, 2000. *Id* at 15. There is no medical evidence that his mental condition deteriorated between 2000 and the date of the hearing, July 20, 2004, let alone between some date in 2000 when he stopped working at the materials handler job and the alleged date of onset. Record at 21. The burden of proof on this issue rests with the plaintiff. Counsel for the plaintiff offered only the plaintiff's own testimony that his condition became worse during the relevant period, without any citation to the record — I have located no such testimony in the record — and that a psychiatrist told him to stop working, *id*. at 45. The reported advice of the psychiatrist came well after the alleged date of onset. *Id*. at 15, 45. Even if this evidence were of sufficient quality under the regulations, it does not demonstrate a significant change in the necessary time period.

[4] I quote only subsection D of the Listing because that appears to be the only subsection applicable to the plaintiff's argument. Itemized Statement at 4-5.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05.  The administrative law judge noted both that the plaintiff had been found to have a full scale IQ of 87, a verbal scale IQ of 74 and a performance scale IQ of 104 in 1986, Record at 17, when he was 14 years old and tested for his school, *id.* at 208-09.  Thus, the first element of subsection D does not appear to have been established.[5]

Even if that were not the case, the administrative law judge found that the plaintiff's impairments caused only slight restriction of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulty maintaining concentration, persistence and pace.  *Id.* at 17.  He found that there had been no episodes of decompensation of the required duration.  The plaintiff challenges the findings other than those concerning activities of daily living and episodes of decompensation, asserting that "both mental RFCs show marked limitations" in the remaining two areas.  Itemized Statement at 5.  The "mental RFCs" to which the itemized statement refers are forms completed by state-agency psychologists, both of which found marked limitations in the areas of "[t]he ability to understand and remember detailed instructions" and "[t]he ability to carry out detailed instructions," Record at 245, 283.  At best, these findings go to the area of difficulties in maintaining concentration, persistence and pace; they cannot reasonably be read to demonstrate marked difficulties in maintaining social functioning.  Marked difficulty in two areas is required by the Listing.  Contrary to the plaintiff's contention, Itemized Statement at 4, I find nothing in Social Security Ruling 96-6p ("SSR 96-6p"), reprinted in *West's Social Security Reporting Service* Rulings (2004-2005) at 129-32, that requires a different outcome on this claim.[6]

---

[5] I note that Willard E. Millis, Jr., PhD., who examined the plaintiff for the state Disability Determination Services on November 12, 2003, obtained testing results of verbal IQ of 72, Performance IQ of 74 and full scale IQ of 70.  Record at 228.

[6] At oral argument, counsel for the plaintiff conceded that there were problems with the argument that the plaintiff had established medical equivalence of Listing 12.05 and asserted that Listing 12.08 should be used, because "everyone agrees that it applies."  The only reference to this Listing in the plaintiff's itemized statement is the following: "Dr. Rines noted the claimant's verbal IQ of 69, and stated in his evaluation that Mr. Lewis likely meets listings 12.05 and 12.08 (R.319)."  Itemized Statement at 4.  This statement cannot reasonably be construed to state that the plaintiff seeks remand on the ground that the evidence requires a finding that his impairment (*continued on next page*)

6

The plaintiff suggests that the administrative law judge "should have obtained evidence from a medical expert to evaluate the claim before rejecting Dr. Rines' opinion." Itemized Statement at 4. SSR 96-6p states that state-agency psychologists' evaluations satisfy the requirement that there be expert evidence in the record to support a finding that an individual's impairment is not equal in severity to any listing. SSR 96-6p at 131. Both of the cited reports fulfill this requirement. The Ruling requires an administrative law judge to consult a medical expert only when "in the opinion of the administrative law judge . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable" or "[w]hen additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency . . . psychological consultant's finding[[s]]." *Id.* at 132. Counsel for the plaintiff was unable to identify any additional medical evidence that would have required the administrative law judge to consult a medical expert. Nor was counsel for the plaintiff able to specify which symptoms, signs and/or laboratory findings in the record, other than the "collective" psychiatric evidence, so clearly suggested that a judgment of equivalence was required that the administrative law judge abused his discretion in failing to consult a medical expert. I find nothing in the record to support either circumstance.

Finally, the plaintiff contends that the administrative law judge created reversible error when he "discounted the medical opinion of treating physician's assistant David St. Pierre," whose records "show several visits for depression." Itemized Statement at 5. He asserts that the administrative law judge cites only "boilerplate language" stating "no depression, anxiety or agitation" from St. Pierre's

---

met or equaled the elements of Listing 12.08. More specific references to the supporting evidence than an assertion that "everyone agrees" that a particular Listing applies to a claimant is also required. The applicability of Listing 12.08 was not sufficiently raised to merit further consideration.

progress notes, when he should have relied on the notation of depression as the chief complaint on days when that "boilerplate" also appeared. Itemized Statement at 5-6.

Contrary to the representation of the plaintiff, *id*. at 5, the administrative law judge did not "mischaracterize[] St. Pierre's opinion." The administrative law judge, Record at 18, refers to a letter written by St. Pierre on June 30, 2004 that is found in Exhibit 9F, in which St. Pierre says just what the administrative law judge says he did. *Compare id*. at 18 *with id*. at 309. It is this opinion which the administrative law judge sets forth his reasons for rejecting. *Id*. at 18. Next, even if I could reasonably interpret the statement "Mood and affect: no depression, anxiety, or agitation" under the heading "Mental Status Exam" in St. Pierre's notes dated November 26, 2003, *id*. at 255, as mere "boilerplate" to be disregarded altogether in favor of St. Pierre's mentions of depression in that same note, a step which I am not inclined to take, the presence of that language in the note suggests a lack of attention to detail on the part of St. Pierre, a medical professional, that might well give rise to doubts about the value of other notes that he made concerning the plaintiff. There is no need to consider the "boilerplate" argument in any event because nothing in St. Pierre's notes, or at least nothing in those portions of his notes to which the plaintiff points, supports the rather sweeping conclusions in his letter to the plaintiff's lawyer. It is not possible to move from the notations "F[ollow] U[p] depression," and "doing better since the lexa pro" and assessment of depression as a "New Problem[]," *id*. at 254-55, to a conclusion that the plaintiff "could not function in any type of situation which may require concentration or follow through with even moderate instructions," or that he "could [not] take the stress of criticism, constructive or otherwise," *id*. at 309.

As the administrative law judge pointed out, *id*. at 18, on two visits after the November 26, 2003 visit cited by the plaintiff, St. Pierre found the plaintiff's depression to be "improved," *id*. at 250, 253. Again, contrary to the plaintiff's assertion, Itemized Statement at 6, the administrative law

judge correctly observed, Record at 18, that St. Pierre's assessment of the plaintiff's limitations was inconsistent with that of Dr. Millis.  *Compare id.* at 229-30 *with id.* at 309.  All of St. Pierre's earlier notes, Exhibit 5F, would have been available to the second state-agency psychologist, whose assessment is dated April 4, 2004 and whose findings are not compatible with the limitations set out by St. Pierre.  The administrative law judge did not err in relying on the opinions of Dr. Millis and the state-agency psychologists.  Record at 18.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 9th day of August, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge